66 A.3d 647

**Michael David GORDON**

v.

**STATE of Maryland.**

No. 43, Sept. Term, 2012.

Court of Appeals of Maryland.

May 20, 2013.

528

Jeffrey M. Ross, Assistant Public Defender, (Paul B. De-Wolfe, Public Defender, Baltimore, MD), on brief, for Petitioner.

Todd W. Hesel, Assistant Attorney General, (Douglas F. Gansler, Attorney General of Maryland, Baltimore, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

ADKINS, J.

In order to convict Michael Gordon of third-degree sex offense, the State had to prove that he was at least twenty-one years old at the time he had the alleged inappropriate contact with a fourteen-year-old girl. The State sought to do that through the testimony of a police officer who had an opportunity to examine Gordon's driver's license and to see the date of birth listed there. Gordon objected to that testimony on hearsay grounds, but the State argued that, even if the date of birth was hearsay, it was admissible as an adoptive admission of a party-opponent under Maryland Rule 5–803(a)(2). Under the State's theory, because Gordon provided the license to the officer upon request, it was as if he himself had stated his age. The trial court agreed with the State and allowed the detective to testify. We affirm.

## STATEMENT OF FACTS

The events giving rise to Gordon's charges and convictions took place on January 10, 2010. That day, a fourteen-year-old girl was shopping at a Pacific Sunwear Store in the St. Charles Towne Mall, where Gordon worked. In Gordon's presence, she tried on a pair of pants in a fitting room. At one point, Gordon "asked to touch parts of [the girl's] body and proceeded to insert his finger in her vagina." He later

"pulled his penis out and asked if she would perform fellatio on him," but she declined.

Gordon was interviewed about this incident by Detective Kenneth Klezia on January 14, 2010. Detective Klezia did not recall expressly asking Gordon for his date of birth, but upon request for identification, Gordon produced his Florida driver's license. Additionally, Detective Klezia had an earlier opportunity to observe Gordon's driver's license, when he visited Pacific Sun on an unrelated incident on January 9, 2010. Likewise, on that day, Gordon produced his Florida driver's license to Detective Klezia upon request.

Gordon was charged with and tried on the counts of third-degree sex offense and sexual solicitation of a minor.[1] In order to satisfy the age element of the charge for the third-degree sex offense, the State had to prove that Gordon was "at least 21 years old" at the time of the offense. Md.Code (2002 & 2010 Cum.Supp.), § 3–307 of the Criminal Law Article.

To satisfy that element, the State called Detective Klezia to the stand. He testified that he had "personal knowledge" of Gordon's age from Gordon's "Florida Driver's License." When Gordon objected to this evidence as hearsay, the State sought to justify the testimony under the adoptive admission by a party-opponent exception to the hearsay rule under Rule 5–803(a)(2). According to the State, by providing the driver's license to Detective Klezia, Gordon was "manifesting a belief that [the driver's license, prepared by the Florida Motor Vehicle Administration] is a true document," and that the date of birth stated on it was correct.

The Circuit Court for Charles County found this argument persuasive and overruled Gordon's objection, allowing Detective Klezia to continue to testify about Gordon's age.[2] At the

---

1. Gordon was also charged with a second-degree assault, indecent exposure, and visual surveillance with prurient intent, but, for trial, these three counts were severed from the first two.

2. After issuing the ruling that the testimony was admissible under Rule 5–803(a)(2), the trial court also observed that "it may be admissible . . .

conclusion of the trial, the jury convicted Gordon on both counts, and he was sentenced to ten years of imprisonment, with all but one year suspended.

Gordon appealed to the Court of Special Appeals. The intermediate appellate court affirmed Gordon's convictions, holding "that Detective Klezia's testimony was admissible pursuant to the exception to the hearsay rule for adoptive admissions set forth in Md. Rule 5–803(a)(2)." *Gordon v. State,* 204 Md.App. 327, 344, 40 A.3d 1093, 1102 (2012). Gordon filed a petition for a writ of certiorari, which we granted, together with the State's cross-petition. *Gordon v. State,* 427 Md. 606, 50 A.3d 605 (2012). The parties present three questions for our review: one dealing with the adoptive admission exception and two questions concerning the public records exception to the hearsay rule. We do not reach the two questions concerning the public records exception [3] because we resolve this case by answering the first question:

> Whether, and if so, under what circumstances, an individual who presents a driver's license in response to a request for identification by a law enforcement officer manifests an adoption or belief in the truth of information contained in the license for purposes of the hearsay exception for adoptive admissions set forth at Maryland Rule 5–803(a)(2)?

as a public record," or as "a record of a vital statistic." At a later time, the trial court opined that Gordon's "passing the license to the police officer ... could be what's considered an applied assertion not hearsay." Finally, the court observed that, because "the age of the Defendant other than it's an element that has to be proven ... doesn't really seem to be something that's disputed.... [I]t's almost to the point where the ... Court feels that—you could almost take judicial notice of Mr. Gordon's age."

**3.** Gordon posed the following question on the public records exception:
> Was Detective Klezia's testimony regarding the date of birth on Mr. Gordon's driver's license admissible under the public record hearsay exception set forth at Maryland Rule 5–803(b)(8)?
The State raised the following question in its cross-petition:
> Did Gordon waive his challenge to the admissibility of the testimony under the public records exception?

## DISCUSSION

The only evidence of Gordon's age—a crucial element of his conviction of third-degree sex offense—was Detective Klezia's testimony that, according to Gordon's driver's license, he was twenty-seven years old at the time of the offense. The trial court admitted that testimony over Gordon's objections, finding that, when Gordon provided his license to the Detective, he "manifested an adoption or belief" in the truthfulness of the information listed there, including the date of birth. The parties ask us to decide whether Gordon did indeed manifest such an adoption or belief, making his age admissible under the admission of a party-opponent exception to the hearsay rule set forth in Rule 5–803(a)(2).[4]

### Standard of Review

Gordon and the State do not agree on the standard of review appropriate in this case. Gordon argues that we should review the trial court's entire ruling de novo, while the State advocates for an abuse of discretion standard for reviewing the trial court's conclusion that Gordon manifested an adoption or belief in the truth of the information listed on the driver's license. That the parties disagree is not surprising. Courts across the country have grappled with articulating the standard of review for hearsay rulings. Although the concept of hearsay evidence has been around for centuries,[5] there is "a split of authority among ... jurisdictions on how evidentiary rulings addressing admissibility under the hearsay rule and its exceptions are to be reviewed." *State v. Saucier*, 283 Conn. 207, 926 A.2d 633, 639 (2007).[6] There are also inconsistencies

---

4. We do not need to discuss whether Detective Klezia's testimony regarding the date of birth on Gordon's driver's license was hearsay. The State concedes "[t]hat point is not in dispute."

5. For the history of the hearsay rule, see John H. Wigmore, *The History of the Hearsay Rule*, 17 Harv. L.Rev. 437, 437 (1904) ("The history of the Hearsay Rule, as a distinct and living idea, begins only in the 1500's, and it does not gain a complete development and final precision until the early 1700's.").

6. The Supreme Court of Connecticut grouped these approaches into three categories: "A majority of courts review such trial court eviden-

within jurisdictions. Just last year, a judge on the United States Court of Appeals for the Sixth Circuit observed with frustration that "decisions show one panel after another disagreeing with each other in published opinions discussing" the standard of review for hearsay rulings. *United States v. Clay*, 677 F.3d 753, 754 (6th Cir.2012) (Kethledge, J., dissenting). He urged his court "to clean up our law on this issue." *Id.*

In Maryland, the standard of review for hearsay rulings has undergone some evolution in the past decade. As we analyze our precedents below, we discern that a judge's hearsay ruling involving an adoptive admission has two components, and our standard of review differs as to each one.

 Gordon and the State concur on two basic points. First, they agree that ordinarily a trial court's rulings on the admissibility of evidence are reviewed for abuse of discretion. *See Hopkins v. State*, 352 Md. 146, 158, 721 A.2d 231, 237 (1998). They also agree that "[w]hether evidence is hearsay is an issue of law reviewed *de novo*." *Bernadyn v. State*, 390 Md. 1, 8, 887 A.2d 602, 606 (2005). Beyond these general propositions, the parties' views diverge.

Unhappy with the trial court's ruling, Gordon maintains that we should give the trial court's ruling no deference and review it de novo. In support of this assertion, he cites our seminal case, *Bernadyn*, in which we held that a medical bill seized by police at a crime scene and addressed to "Michael Bernadyn" at the same address, constituted hearsay, when used to prove that Bernadyn lived there. *Id.* at 3, 887 A.2d at 603. Judge Raker, writing for the Court, explained that—unless a hearsay exception applied—the trial court "has no discretion to admit hearsay" and explained that "[w]hether evidence is hearsay is an issue of law reviewed *de novo*." *Id.* at 8, 887 A.2d at 606.

tiary rulings for an abuse of discretion; while others engage in de novo review; and still others engage in a 'hybrid' scope of review dependent on whether the hearsay rule or an exception to that rule is under consideration." *State v. Saucier*, 283 Conn. 207, 926 A.2d 633, 639–40 (2007) (footnotes omitted).

The State does not attach the same significance to this statement in *Bernadyn* as does Gordon. It reads *Bernadyn* narrowly—as setting forth a de novo standard of review only for legal determinations of whether evidence is hearsay, but not for decisions about whether a hearsay exception applies.[7] According to the State, "[t]he evaluation of whether Gordon adopted the statement through his conduct ... is not a legal question, [rather it] involves a weighing of the evidence, which is reviewed under the more deferential abuse of discretion standard."

In support of this argument, the State cites *Brown v. The Daniel Realty Co.*, 409 Md. 565, 599 n. 26, 976 A.2d 300, 320 n. 26 (2009), in which we characterized a trial court's determination that certain "deposition testimony was the vicarious admission of Petitioner" as a "factual determination," and a pre-*Bernadyn* case in which we utilized the abuse of discretion standard of review, *Key–El v. State*, 349 Md. 811, 813, 709 A.2d 1305, 1305 (1998), *overruled by Weitzel v. State*, 384 Md. 451, 863 A.2d 999 (2004). The State also cites several federal cases. *See, e.g., United States v. Pulido–Jacobo*, 377 F.3d 1124, 1132 (10th Cir.2004) ("Our review is even more deferential where the evidentiary ruling concerns the admissibility of what is claimed to be hearsay evidence." (citation and quotation marks omitted)).

The parties' divergent views about the standard of review likely stem from the nature of hearsay rulings. On the one hand, hearsay rulings are evidentiary rulings, which are typically subject to review for abuse of discretion. Accordingly,

---

**7.** The State also attempts to distinguish *Bernadyn* from this case. It points out that, unlike *Bernadyn*, where the primary issue was whether evidence constituted hearsay, the question here "is not whether the date of birth on Gordon's license was hearsay," but "whether the State proved that he adopted the hearsay statement through his conduct, thus making the statement admissible under the exception to the hearsay rule in Rule 5–803(a)." Although it is true that the main question in *Bernadyn* was whether the bill was hearsay, after concluding that it was, we went on to consider whether it was nevertheless admissible. Thus, the State's attempt to distinguish this case from *Bernadyn* is unavailing.

Maryland's older cases almost always treated the admissibility of hearsay evidence as an issue left to "the discretion of the trial judge" and spoke of reviewing hearsay rulings for abuse of discretion.[8] *See Jacobs v. State*, 45 Md.App. 634, 653, 415 A.2d 590, 600 (1980) ("When dealing with the rule against hearsay and its exceptions according to common law evidentiary principles, admissibility is a question addressed exclusively to the discretion of the trial judge...."); *Pratt v. State*, 39 Md.App. 442, 456, 387 A.2d 779, 788 (1978) ("[W]e are unable to say the trial judge abused his discretion in admitting the records."), *aff'd*, 284 Md. 516, 398 A.2d 421 (1979).

On the other hand, under the rules of evidence, hearsay rulings are not discretionary. *See* Md. Rule 5–802. ("Except as otherwise provided by these rules or permitted by applicable constitutional provisions or statutes, hearsay is not admissible."). Judge Raker clarified in *Bernadyn* that we would review a trial court's legal conclusions on hearsay evidence without deference:

> We review rulings on the admissibility of evidence ordinarily on an abuse of discretion standard. Review of the admissibility of evidence which is hearsay is different. Hearsay, under our rules, *must* be excluded as evidence at trial, unless it falls within an exception to the hearsay rule excluding such evidence or is "permitted by applicable constitutional provisions or statutes." Md. Rule 5–802.

---

8. Some states continue to apply the abuse of discretion standard of review today. *See, e.g., Pressey v. State*, 25 A.3d 756, 760 (Del.2011). But, although many courts say they will review a trial court's hearsay ruling for abuse of discretion, they use "the traditional tripartite law-fact-discretion standard of review." Peter Nicolas, *De Novo Review in Deferential Robes?: A Deconstruction of the Standard of Review of Evidentiary Errors in the Federal System*, 54 Syracuse L.Rev. 531, 535–37 (2004). For instance, the United States Court of Appeals for Tenth Circuit has explained: "We review questions concerning the admission of evidence under an abuse of discretion standard. Under that standard, we will not disturb an evidentiary ruling absent a distinct showing that it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error in judgment." *United States v. Jenkins*, 313 F.3d 549, 559 (10th Cir.2002).

Thus, a circuit court has no discretion to admit hearsay in the absence of a provision providing for its admissibility. Whether evidence is hearsay is an issue of law reviewed *de novo*. (Citation omitted).

390 Md. at 7–8, 887 A.2d at 606; *see also J.L. Matthews, Inc. v. Md.–Nat'l Capital Park & Planning Comm'n*, 368 Md. 71, 92, 792 A.2d 288, 300 (2002) (trial court's admission of hearsay "enjoys no presumption of correctness on review and is not entitled to any deference") (alterations, citation, and quotation marks omitted).

Since *Bernadyn*, we have reiterated time and again that determinations of hearsay admissibility are subject to review on the law. *See, e.g., Thomas v. State*, 429 Md. 85, 97–98, 55 A.3d 10, 17 (2012); *Dulyx v. State*, 425 Md. 273, 285, 40 A.3d 416, 426 (2012); *Parker v. State*, 408 Md. 428, 436, 970 A.2d 320, 325 (2009); *Figgins v. Cochrane*, 403 Md. 392, 419–20, 942 A.2d 736, 752 (2008); *Hall v. Univ. of Md. Med. Sys. Corp.*, 398 Md. 67, 82–83, 919 A.2d 1177, 1186 (2007).

But not all aspects of a hearsay ruling need be purely legal. A hearsay ruling may involve several layers of analysis. Proponents of the evidence challenged on hearsay grounds usually argue (1) that the evidence at issue is not hearsay, and even if it is, (2) that it is nevertheless admissible. The first inquiry is legal in nature. *See Bernadyn*, 390 Md. at 8, 887 A.2d at 606. But the second issue may require the trial court to make both factual and legal findings. For instance, in determining whether evidence is admissible under the excited utterance exception to the hearsay rule, codified in Rule 5–803(b)(2), the trial court looks into "the declarant's subjective state of mind" to determine whether "under all the circumstances, [he is] still excited or upset to that degree." 6A Lynn McLain, *Maryland Practice: Maryland Evidence State & Federal* § 803(2):1(c) (2d ed.2001). It considers such factors, as, for example, how much time has passed since the event, whether the statement was spontaneous or prompted, and the nature of the statement, such as whether it was self-serving. *Id.* Such factual

determinations require deference from appellate courts.[9]

This is not the first case in which we have examined how the multi-dimensional nature of hearsay determinations plays out in terms of appellate review. In *State v. Walker*, decided before *Bernadyn*, the Court held that rulings on the residual exception to the hearsay rule were subject to de novo review as a matter of law. 345 Md. 293, 325, 691 A.2d 1341, 1356 (1997). In writing for the Court, Judge Wilner explained: "Some of the subsidiary determinations made by a trial court in arriving at its findings and conclusions [about the residual exception] may well be purely factual or discretionary ones, and, as to them, we will continue to apply a clearly erroneous or abuse of discretion standard."[10] *Id.*

Many of our sister states take a two-part approach in reviewing hearsay rulings as well. For instance, the Iowa courts "review the admission of hearsay for errors at law, not for abuse of discretion[, but] give deference to the [trial]

---

**9.** Admittedly, neither *Bernadyn* nor its progeny have made this distinction between legal and factual findings and the corresponding standards of review. That is because, however, in those cases, the trial courts did not reach the admissibility of hearsay evidence—halting the analysis with a conclusion that the evidence at issue was not hearsay—and therefore, there were no factual findings for *Bernadyn* and its progeny to review. *See, e.g., Thomas v. State*, 429 Md. 85, 100–01, 55 A.3d 10, 19 (2012) (the trial court simply overruled objection on hearsay grounds and made no findings of fact); *Bernadyn v. State*, 390 Md. 1, 18, 887 A.2d 602, 612 (2005) ("The trial judge never required the prosecutor to proffer why the evidence was offered, but instead simply overruled defense counsel's objection, and admitted the evidence."). In another recent case, *Dulyx v. State*, we reviewed a trial court's legal ruling that a hearsay statement (testimony at a suppression hearing) was admissible under the "former testimony" exception to the hearsay rule under Rule 5–804(b)(1). 425 Md. 273, 275, 40 A.3d 416, 418 (2012). No factual findings by a trial court were involved in that case.

**10.** Although, at the time, many of our opinions spoke of hearsay rulings as discretionary, we reasoned that, in the context of the residual exception to the hearsay rule, only by reviewing the trial court's legal conclusions without deference, under a de novo standard of review, "can we be faithful to the limitations and caveats expressed in the rule and the Committee Note and assure a 'well-defined jurisprudence' " of hearsay exceptions. *State v. Walker*, 345 Md. 293, 325, 691 A.2d 1341, 1356 (1997).

court's factual findings and uphold such findings if they are supported by substantial evidence." *State v. Long,* 628 N.W.2d 440, 447 (Iowa 2001) (citation omitted). Likewise, the Nebraska courts "review[ ] for clear error the factual findings underpinning a trial court's hearsay ruling and review[ ] de novo the court's ultimate determination to admit evidence over a hearsay objection." *State v. McCave,* 282 Neb. 500, 805 N.W.2d 290, 316 (2011); *see also Brown v. United States,* 27 A.3d 127, 130–31 (D.C.2011) (the de novo standard of review governs review of legal rulings on whether a hearsay state- ment falls within an exception, but "the underlying factual findings" are subject to the "clearly erroneous" standard (citations omitted)), *cert. denied,* —— U.S. ——, 133 S.Ct. 374, 184 L.Ed.2d 221 (2012); *Young v. Commonwealth,* 50 S.W.3d 148, 167 (Ky.2001) ("[W]hen the determination [of whether a hearsay exception applies] depends upon the resolution of a preliminary question of fact, the resolution is determined by the trial judge ... on the basis of a preponderance of the evidence, and the resolution will not be overturned unless clearly erroneous, i.e., unless unsupported by substantial evi- dence." (citation omitted)).

Under this two-dimensional approach, the trial court's ulti- mate determination of whether particular evidence is hearsay or whether it is admissible under a hearsay exception is owed no deference on appeal, but the factual findings underpinning this legal conclusion necessitate a more deferential standard of review. Accordingly, the trial court's legal conclusions are reviewed de novo, *see Bernadyn,* 390 Md. at 7–8, 887 A.2d at 606, but the trial court's factual findings will not be disturbed absent clear error, *see State v. Suddith,* 379 Md. 425, 430–31, 842 A.2d 716, 719 (2004) (and citations contained therein).

The sticky wicket in this case is deciding whether the trial court made a factual or legal conclusion in ruling that, in handing the officer his driver's license in response to a request for identification, Gordon made an adoptive admission. An examination of the evidentiary record is required. First though, a brief explanation of Rule 5–803(a)(2) is in order.

## The Admission by a Party–Opponent Exception

Rule 5–803 provides that a "[s]tatement by party-opponent" is "not excluded by the hearsay rule, even though the declarant is available as a witness," when the party-opponent "has manifested an adoption or belief in [the] truth" of that statement.[11] This exception, known as an "adoptive admission," can apply in multiple situations. For instance, in *Richardson v. Anderson*, the defendant's statement that the accounting report "was correct except as to two items contained therein" made the report itself "admissible as an admission of the defendant." 109 Md. 641, 649, 72 A. 485, 488 (1909). In *Brandon v. Molesworth*, the defendant employer adopted the statement of an employee by nodding in agreement, when the employee acknowledged that the plaintiff was fired, in part, because she was a woman. 104 Md.App. 167, 196, 655 A.2d 1292, 1307 (1995), *aff'd in part, rev'd in part*, 341 Md. 621, 672 A.2d 608 (1996); *see also Ewell v. State*, 228 Md. 615, 619–21, 180 A.2d 857, 860–61 (1962) (defendant's failure to respond, under the circumstances, when companion said "we just yoked a man," was admissible).

In many, if not most, circumstances, a trial court's decision about whether a person made an adoptive admission will be factual. This is certainly so when there are disputed facts about whether a question was asked, what was said, and what

---

11. In full, Md. Rule 5–803 states:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
> (a) Statement by party-opponent. A statement that is offered against a party and is:
> (1) The party's own statement, in either an individual or representative capacity;
> (2) A statement of which the party has manifested an adoption or belief in its truth;
> (3) A statement by a person authorized by the party to make a statement concerning the subject;
> (4) A statement by the party's agent or employee made during the agency or employment relationship concerning a matter within the scope of the agency or employment; or
> (5) A statement by a coconspirator of the party during the course and in furtherance of the conspiracy.

words or non-verbal conduct were involved in reply. For instance, in *Ewell v. State*, it was not clear who asked the codefendants "what they were doing" or who replied "we just yoked a man." 228 Md. at 617, 180 A.2d at 859. Defendant Ewell testified "that no question had been asked and that neither he nor the codefendant had replied to a question." [12] *Id.; see also Brandon*, 104 Md.App. at 177, 196, 655 A.2d at 1297, 1307 (the defendant disputed both the statement and his nod in agreement).[13]

Even if there is no dispute about *what* was said or done, the decision of whether there was an adoptive admission may still be factual when the circumstances allow different inferences depending on the trial court's interpretation of those facts. In *Darvish v. Gohari*, the defendant was asked to confirm certain statements the plaintiff alleged were defamatory, but made no attempt to refute that he made the statements or that they were untrue. 130 Md.App. 265, 270, 745 A.2d 1134, 1136–37 (2000), *aff'd*, 363 Md. 42, 767 A.2d 321 (2001). The Court of

---

**12.** The Court acknowledged that the statement "we just yoked a man" could have been made by either defendant or even an acquaintance, but "assume[d], as did the trial court in admitting the challenged testimony," that it was someone other than Ewell. The Court concluded that "the jury reasonably could have found that Ewell heard and understood both the assertion that 'we just yoked a man' and that the pronoun 'we' included him, as well as that he remained silent although fully free to speak." *Ewell v. State*, 228 Md. 615, 619–20, 180 A.2d 857, 860 (1962).

**13.** The Court of Special Appeals upheld the admission of the statement:
We cannot see how [the employee's] statement [that plaintiff was fired, in part, because she was a woman,] could fall outside this definition. Assuming the truth of Molesworth's allegations, Brandon's nod clearly constituted either a manifestation of adoption or a belief in the truth of Palmer's statement. The only way to explain the nod—which is clearly admissible—is to introduce the statement that prompted it.
*Brandon v. Molesworth*, 104 Md.App. 167, 198, 655 A.2d 1292, 1308 (1995), *aff'd in part, rev'd in part*, 341 Md. 621, 672 A.2d 608. This Court affirmed: "Brandon's nod was admissible hearsay under Maryland Rule 5–803(a)(2) because it 'manifested an adoption' of Palmer's statement. Thus, the nod was a communication by Brandon that part of the reason he fired Molesworth was because she is a woman." *Molesworth v. Brandon*, 341 Md. 621, 641, 672 A.2d 608, 618 (1996) (citation omitted).

Special Appeals affirmed the trial court's conclusion that the defendant's silence constituted tacit adoption of the statements because "a reasonable person under the circumstances" would have denied the statements. *Id.* at 278–79, 745 A.2d at 1141; *see also Henry v. State,* 324 Md. 204, 240, 596 A.2d 1024, 1042 (1991) (affirming the trial court's admission into evidence of statements about recent murders, which were made in the defendant's presence while the defendant and others were "dancing or jumping up and down, 'pretending that they were like firing shots.' "); *Burgess v. State,* 89 Md.App. 522, 535, 537, 598 A.2d 830, 837, 838 (1991) (defendant's "giggling," while "tossing a rock in his hand," at the statement "let's introduce my Man Mad Ball to the bridge" constituted an adoptive admission that defendant was familiar with the activity of throwing rocks at cars from a bridge).

## Gordon's Adoptive Admission of His Date of Birth

Although Gordon did not verbally state how old he was, the trial court found that, by handing his license to Detective Klezia in response to a request for some verification of his identity, Gordon manifested an adoption or belief in the truth of the information listed there, including the date of birth.[14] Thus, the trial court concluded, this hearsay statement fell within the party-opponent statement exception to the hearsay rule as an adoptive admission allowed under Rule 5–803(a)(2).

The trial court's ruling was two-fold: (1) the court found that Gordon's act of handing the license to Detective Klezia manifested an adoption by Gordon of the date of birth listed on the license; and (2) the court concluded that the detective's statement was admissible under the party-opponent statement exception set forth in Rule 5–803(a)(2).

The following sets forth in full the evidence about Gordon's age that the trial court had before it in making the first part of the ruling:

---

**14.** The trial court also found other hearsay exceptions applicable, as we indicated above in footnote 2.

**542**

[MR. GRANADOS—Prosecutor]: Now, Detective Klezia, can you tell the ladies and gentlemen of the jury when you first came into contact with Mr. Gordon?

[DETECTIVE KLEZIA]: That's gonna be the—the 9th of January, 2010.

\* \* \*

Q: Now, when you spoke with Mr. Gordon on January 9th of this year did he give you his date of birth?

A: I looked at his identification; so yes.

Q: Okay. How old is Mr. Gordon?

MR. REVILLO [Defense Counsel]: Objection.

THE COURT: Come up please Counsel.

(Counsel approach[ ] the bench.)

MR. REVILLO: Well, Your Honor, his age would be an element of this case and therefore it requires ... firsthand information and the identification is hearsay.

MR. GRANADOS: But this information was provided to him by the Defendant. He showed him the I.D. That's at most an adoptive admission.

THE COURT: What type of I.D. are we talking about?

MR. GRANADOS: I can ask the Detective. I believe it's a Driver's License.

THE COURT: I'm gonna sustain the objection at this point. Please go forward. Ask another question.

(Counsel return[ ] to trial tables.)

[MR. GRANADOS]: Detective Klezia, do you have any personal knowledge of Michael Gordon's age?

[DETECTIVE KLEZIA]: Yes.

Q: How did you come to know his age?

A: From his Florida Driver's license.

Q: Okay. Did you ever confirm his date of birth with him?

A: Like specifically ask him?

Q: Yes.

A: I don't recall. I don't think.

Q: When you interviewed him—when was the next time you had contact with him?

A: I interviewed him on the 14th of January, 2010.

Q: Okay. And where did you interview him?

A: At the Charles County Sheriff's Office Headquarters Building.

Q: And who was there with you during the interview?

A: It was just him and I.

Q: And again, did you obtain a date of birth or an age for Mr. Gordon?

A: Yes, just through his Driver's License.

Q: Okay. Who provided the Driver's License to you?

A: Mr. Gordon did.

Q: Did you obtain any other personal identifying information from him?

A: Not off hand; no.

* * *

Q: Okay. And the information that you obtained from Mr. Gordon how old was Mr. Gordon?

MR. RIVIELLO: Objection.

THE COURT: Detective is—am I correct to assume you never asked him his—his—his birth?

A: I don't recall specifically asking him for a date of birth but.

THE COURT: All right. And the information you have is—is what he showed you; some document he showed you, a Driver's License?

A: Yes. Yes, Sir.[15]

---

**15.** After the trial court overruled Gordon's objection, the examination continued:

[MR. GRANADOS]: So Detective Klezia, based on the identification provided to you twice by the Defendant, what is Michael Gordon's date of birth?
[DETECTIVE KLEZIA]: 5/23/1982.

Gordon maintains that there was "no basis in the record for inferring that [he] produced his driver's license in response to Detective Klezia asking him his age." He emphasizes that, for the exception under Rule 5–803(a)(2) to apply, the manifestation of an adoption or belief must be unambiguous. *See Bellamy v. State*, 403 Md. 308, 326, 941 A.2d 1107, 1117 (2008) (speaking of "unequivocally manifest[ing] an adoption of or belief in" a statement of another). In this regard, argues Gordon, a manifestation is unambiguous only when "the surrounding circumstances, including the circumstances and nature of the underlying statement itself," demonstrate "an intent to adopt the statement." (Quoting *White Indus., Inc. v. Cessna Aircraft Co.*, 611 F.Supp. 1049, 1062 (W.D.Mo.1985)); *see also* 2 Kenneth S. Broun, *McCormick on Evidence* § 261, at 300–01 (7th ed. 2013) ("The circumstances surrounding the party's declaration must be examined to determine whether they indicated an approval of the statement."). According to Gordon, if the adoptive admission is by silence or conduct, a "link" between a request for information and an allegedly adoptive admission is essential.[16]

To illustrate his point, Gordon contrasts this case to *Brandon*, where the adopted statement—"that's part of it"—was made in response to a specific question of whether the plaintiff was fired for being a woman. 104 Md.App. at 176, 655 A.2d at 1297. Gordon points out that "Detective Klezia acknowledged that he never asked Petitioner for his age." Rather, according to Gordon, "[a] fair reading of the record indicates that [he] produced his driver's license" either to confirm his identify or to enter police headquarters. He concludes that, because he did not produce his driver's license in response to a question about his age, "his conduct [was] ambiguous" and cannot be

---

16. In support of this position, Gordon quotes *Grier v. State*, in which we stated, with respect to admission of silence as evidence of guilt, that "[e]vidence of a person's silence" may be admissible "if it amounts to a tacit admission, that is, if it is in response to an assertion which the party would, under all circumstances, naturally be expected to deny." 351 Md. 241, 252, 718 A.2d 211, 217 (1998).

considered a manifestation of the adoption or belief in the truth of the birth date listed on his license.

The State agrees with the general premise that the conduct needs to be unambiguous, but contends that this requirement is met so long as "the court determines that the jury can properly infer from the party's conduct an intent to adopt the statement or a belief in its truth." *See Ewell,* 228 Md. at 620–21, 180 A.2d at 861 ("We think a jury of reasonable men could have found that it would have been natural for Ewell to reply under the circumstances, and, this being so, we cannot find error in the submission of the testimony complained of to the jury.").[17] Citing *White Industries,* the State argues that the scenario in this case can readily be considered an adoptive admission of "the truth of the information" contained in that document. 611 F.Supp. at 1062 ("There is no doubt that where a party's use of a document supplied by another in fact represents the party's intended assertion of the truth of the information therein, an adoptive admission can be found."); *see also* 4 John Henry Wigmore, *Evidence* § 1073(4) (James H. Chadbourn ed., rev. ed. 1972) ("The party's use of a document made by a third person will frequently amount to an approval of its statements as correct, and thus it may be received against him as an admission by adoption." (emphasis removed)).

We agree with the State that when the trial court finds credible evidence that a person supplies a driver's license to a police officer when asked for identification, it does not err in admitting into evidence both the name and birth date on that license. The question of whether Gordon manifested an

---

**17.** The State also cites *Briggeman v. Albert,* where we held that payment of a traffic citation does not support an inference of guilt under an adoptive admission theory because "people who believe themselves innocent often pay preset fines for the sake of convenience or expediency." 322 Md. 133, 138, 586 A.2d 15, 17 (1991); *see also United States v. Barletta,* 652 F.2d 218, 219 (1st Cir.1981) (a trial court should determine the admissibility of an adoptive admission by asking "whether a reasonable jury could properly find the ultimate fact in favor of the proponent of the evidence").

adoption or belief in the truth of the date of birth listed on the license was a preliminary question of fact to be resolved by the trial court before deciding whether to admit the statement into evidence. As Professor McLain has noted, most tacit admission cases "treat the preliminary facts ... as falling under the corollary to Md. Rule 5–104(b) [relevance conditioned on fact], rather than 5–104(a) [questions of admissibility generally]"). *See* McLain, at § 801(4):3 n. 10 (quoting *Barber v. State*, 191 Md. 555, 565, 62 A.2d 616, 620 (1948) ("Failure to deny the charge, under some circumstances, may permit an inference of an admission of guilt. Although the ultimate question is for the jury, a preliminary question for the court is presented."); *see also Ewell*, 228 Md. at 620, 180 A.2d at 860 ("The matter turns on whether the trial judge erred in the judgment he necessarily made in permitting the evidence to go to the jury—that under the circumstances it would have been natural for Ewell to make a reply if he had not agreed with the statement."); *State v. Carlson*, 311 Or. 201, 808 P.2d 1002, 1006 (1991) ("Whether a party intended to adopt, agree with or approve another person's statement is a preliminary question of fact to be determined by the trial judge under OEC 104."); McCormick, at § 262 (making the same observation as Professor McLain but with respect to the Federal Rules of Evidence).[18]

The United States Court of Appeals for the District of Columbia has explained the interplay between the trial court's preliminary determination and the jury's ultimate conclusion that the adoption was unambiguous:

---

18. Under Rule 5–104(b), "When the relevance of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding by the trier of fact that the condition has been fulfilled." For instance, in the context of admission by silence, before admitting a statement "against the silent party," the trial court must make the following preliminary findings: "(1) that the statement was actually made; (2) that the reaction of silence or evasion took place as claimed; (3) that the party heard and understood the statement; and (4) that under all the circumstances the party's conduct makes it probable that he believed the statement to be true." *Ewell*, 228 Md. at 618–19, 180 A.2d at 859–60 (citation and quotation marks omitted).

When deciding whether to admit an adopted statement—

the judge must make a preliminary determination whether a jury could reasonably conclude that the defendant unambiguously adopted another person's incriminating statement. If the judge answers that question in the affirmative and admits the evidence, then the jury's function is to decide whether it *should* reach the conclusion which the judge has held that it *may* reach, namely that there was unambiguous assent.

*Blackson v. United States,* 979 A.2d 1, 7 (D.C.2009) (quoting *Holmes v. United States,* 580 A.2d 1259, 1264 n. 8 (D.C.1990).) Thus, on appeal of an allegedly erroneous admission of evidence as an adoptive admission, the question is not whether the evidence before the judge clearly proved that the person against whom the statement was admitted unambiguously adopted the statement. Rather, the question is whether "there is sufficient evidence from which a jury *could* reasonably conclude that the defendant unambiguously adopted another person's incriminating statement." [19] *Id.* at 8 (citation and quotation marks omitted).[20]

---

**19.** In his Reply Brief, Gordon disagrees with the premise that the trial court only makes a preliminary finding but that the ultimate determination of whether the person manifested an adoption or belief in the truth of the statement of another is for the jury to make. He posits that it is not "as if a court could at once find adoptive conduct to be unambiguous while containing an element of ambiguity."

We are not persuaded by this argument. Courts make similar preliminary findings in other contexts as well. For example, courts make the preliminary determination of whether a confession was voluntary (making it admissible), but the ultimate decision-maker on this issue is the jury. *Hof v. State,* 337 Md. 581, 605, 655 A.2d 370, 382 (1995). If we were to follow Gordon's logic, so long as there was a possibility that the jury would find a confession involuntary, trial courts could never find confessions voluntary, rendering them inadmissible. That clearly is not the case.

**20.** In *Blackson v. United States,* in finding an adoptive admission, the trial court considered the circumstances surrounding the statement and concluded that the defendant was " 'in a position where you would expect that if things didn't occur the way they were describing them he would have said something.' " 979 A.2d 1, 7 (D.C.2009). The defendant argued on appeal that " 'the evidence at trial was insufficient as a

■ In this case, in ruling Detective Klezia's testimony admissible, the trial court was aware that Gordon presented his driver's license to the detective on two occasions, which were only several days apart. Even if Detective Klezia did not specifically ask Gordon about his age and only asked him for identification, a person's name and birth date undoubtedly are pieces of identifying information. *See* Md.Code (1977, 2012 Repl.Vol.), § 12–301(a) & (g) of the Transportation Article (requiring proof of age upon application for a state-issued identification card and listing the name and birth date as two of the identifying elements to be listed on the identification card). The trial court noted that Gordon never once disputed the date of birth listed on his license. This reflects the trial court's factual inference that the occasions on which the license was presented to Detective Klezia were circumstances in which Gordon could reasonably be expected to say something if his date of birth was not stated accurately on his license. We see no clear error in the trial court's conclusion that, when Gordon presented his driver's license to Detective Klezia, it was as if he stated: "My name is Michael David Gordon, and I am twenty-seven years old."

Thus, the record demonstrates that there was sufficient evidence from which the jury could reasonably conclude that— by giving his driver's license to the detective, Gordon manifested an adoption or belief in the truth of the information listed on the license.[21] To be sure, the testimony includes only

---

matter of law to clearly prove that [he] heard, understood, and unambiguously assented to all of the statements with his silence.' " *Id.* at 8. The Court of Appeals for the District of Columbia noted that Blackson "misapprehends the law" and explained that for the statement to be admissible, it was not necessary that the evidence " 'clearly proved that Blaskson heard, understood, and unambiguously assented to all of the statements with his silence' in order to be admissible." *Id.* (alterations and citations omitted). So long as there was sufficient evidence for the jury to make that inference, the statement was properly admissible.

21. The jury, of course, was free to reach a different conclusion. Even Gordon acknowledges that "[t]he jury was free to disbelieve Detective Klezia's testimony that Petitioner presented the driver's license to him,

a limited discussion of the facts surrounding Gordon's action in handing his license to Detective Klezia. But, the sparsity of words used to describe the transaction likely reflects the simplicity of the interchange. The exchange is a customary and familiar one that takes few words to describe. In the absence of something to suggest that this is not a typical exchange, the factual inference the trial court made was reasonable. Once the court made the factual determination, the legal conclusion that Detective Klezia's testimony was admissible called for a straightforward application of Rule 5–803(a)(2). The evidence was admissible as an exception to the hearsay rule.

We are not dissuaded from this view by Gordon's emphasis on what he calls "a systemic problem with persons obtaining and using fraudulent driver's licenses." Citing numerous secondary sources discussing an epidemic of fraudulent driver's licenses, especially among our youth, but also terrorists, and persons entering or remaining in this country illegally, Gordon contends that the information on a driver's license cannot and should not be trusted. In Gordon's view, "the fact that a person is required to carry a driver's license and present it upon an officer's demand does not nullify the real possibility that that person is carrying a fraudulent driver's license and has no intention of assenting to the truth of its content except in very particular circumstances, e.g., when attempting to purchase alcohol." [22]

We agree with the State that generally people carry driver's licenses and provide them to law enforcement upon request for one of two reasons: "to prove one's authorization to drive a motor vehicle, and to prove one's identity." The mere fact

---

or to doubt whether Detective Klezia read the date-of-birth information correctly, or to doubt that the information on the license was accurate."

**22.** He suggests, "[h]ad Detective Klezia instead been a liquor store cashier, Petitioner's production of his driver's license for the purpose of obtaining liquor might be sufficient for purposes of the adoptive admission exception." Without "that type of specific communication," there was no manifestation of adoption or belief in the date of birth listed on the license.

that liars and criminals use licenses for fraudulent purposes does not eradicate the usual and normal inference that when a person offers a driver's license to prove his identity he makes a representation that the information stated on the license is accurate. Even if a person offers a license that has been fraudulently altered as to the date of birth, that would be no reason to exempt the defrauder from operation of this hearsay exception. To do so would unduly limit the plain meaning of Rule 5–803(a)(2).

## Conclusion

The determination of whether a declarant manifested an adoption or belief in the truth of a statement of another so as to constitute an adoptive admission by the party-opponent under Maryland Rule 5–803(a)(2) is a preliminary factual determination to be made by the trial court. We see no clear error in the trial court's finding that—by providing his driver's license to the detective—Gordon manifested an adoption or belief in the truth of the information listed on the license, including his date of birth.

Because Gordon's conduct of providing the driver's license to the detective constituted an adoptive admission under Rule 5–803(a)(2), the trial court was legally correct in admitting into evidence the testimony of the detective as to his knowledge of Gordon's birth date, as listed on his driver's license.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.**