REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1397

September Term, 2014

_____

MICHAEL EDWARD BAKER

v.

STATE OF MARYLAND

_____

Woodward,
Graeff,
Moylan, Charles E., Jr.
  (Retired, Specially Assigned),

JJ.

_____

Opinion by Graeff, J.

_____

Filed: July 6, 2015

On November 8, 2013, Michael Edward Baker, appellant, was arrested and charged with second degree rape, second degree sex offense, fourth degree sex offense, second degree assault, and impersonating a police officer. Appellant subsequently was convicted, in the Circuit Court for Cecil County, of each offense, and the court sentenced him to a prison term of ten years.[1]

On appeal, appellant raises three issues for our review, which we have reordered and rephrased slightly, as follows:

1. Did the circuit court err in admitting call records obtained from appellant's phone service provider and expert testimony relating to the records?

2. Did the circuit court err in failing to exclude appellant's statement to the police?

3. Did the prosecutor's closing argument constitute plain error?

For the reasons set forth below, we answer question one in the affirmative, and therefore, we shall reverse the judgments of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

Because appellant does not challenge the sufficiency of the evidence to support his conviction, we will recite only those facts necessary to provide context to our discussion of appellant's contentions.

---

[1] The court sentenced appellant as follows: ten years for the second degree rape conviction; ten years, consecutive, all suspended, for the second degree sex offense conviction; six months, consecutive, all suspended, for the impersonating a police officer conviction. The remaining convictions were merged for sentencing purposes.

# I.

## A.O.'s Allegations

On July 18, 2013, the victim, A.O. was "prostituting" at the Knights Inn on Belle Road in Cecil County.[2] She testified that the person she worked for, her former boyfriend, set up an advertisement on a website, backpage.com, which listed a "Google account number," "a separate [phone] number that rings to your personal phone."

Sometime after dark, she received a call from a man, whom she later identified as appellant, seeking an encounter with her. She told appellant where to meet her, and he came to her hotel room between 7:00 and 9:00 p.m.

Appellant stated that he wanted to engage in oral and vaginal sex without a condom. A.O. told him that she did not do that. Appellant pulled out what appeared to be a police badge and told A.O. that he was a police officer. He said that if she did not do what he told her to do, he was going to arrest her, and he "made [her] write down [her] information like a cop would do." He also informed her that "his supervisor was in a nearby room."

Appellant then physically struck A.O. and forced her to engage in oral and vaginal sex without the use of a condom. At one point during the encounter, appellant appeared to receive a phone call, and he responded to the person on the phone: "Yeah, I'm with her right now, she's scared, but there's not really nothing here I could charge her for, so we

---

[2] We will use the victim's initials to protect her privacy.

will wrap things up." After appellant left, A.O. was "an emotional wreck," and she told several girls that she worked with that she had been raped.

At some point in the week following the rape, appellant contacted A.O. again. He told her: "Hey, it's Mike, the cop from the other night, I just want to let you know that don't be out there tonight because they are doing stings again," and he stated that he just wanted to warn her. After this call, A.O. put appellant's phone number in her cell phone under the contact name: "Do not answer." The day after the second phone call, A.O.'s boyfriend arranged for her to meet with a police officer, but A.O. was "still an emotional wreck," and she refused to talk to the officer.

In October 2013, Trooper First Class Alan Flaugher approached A.O. to question her about the rape. Although A.O. was hesitant to talk to Trooper Flaugher because she believed appellant was a police officer, and she "didn't want to talk to another cop about what a cop did to" her, she eventually spoke with Trooper Flaugher. She showed Trooper Flaugher appellant's number on her phone and described how appellant raped her. Trooper Flaugher later showed her a photo array, and A.O. identified a photograph of appellant as the man who raped her. She also identified appellant in court.

**II.**

**Call Records**

As discussed in more detail, *infra*, Trooper Flaugher testified that he obtained a number from A.O.'s cell phone that she identified as the number of the man who raped her. He further testified that, based on records he obtained from AT&T, he identified that

3

number as belonging to appellant. The call records reflected that, on the evening of the rape, there were several calls from the number he identified with appellant to A.O.'s phone number.

**DISCUSSION**

Appellant contends that the circuit court erred in admitting the "records connecting [his] cell phone with A.O.'s phone." As explained below, we agree.

**I.**

**Proceedings Below**

On October 15, 2013, the circuit court issued an order directing "AT&T/Cingular" to produce "certified copies of subscriber information, C.D.R. (call detail records), incoming and outgoing text message phone numbers, and cell tower locations/records . . . from July 17, 2013 to August 30, 2013" for the cell phone number that A.O. identified as belonging to the man who raped her. The State's Attorney's Office faxed the order to "AT&T/Cingular Wireless." AT&T responded with a cover letter stating: "All available requested information is enclosed," along with the call records directed to be provided by the circuit court's order. The logs indicate that the phone number was owned by "Michael E. Baker," and they showed the calls that the phone made, along with the cell phone towers from which each call "pinged" to connect to the call.

The State attempted to admit into evidence the logs of the calls made from appellant's phone. The prosecution began by asking Trooper Flaugher whether he obtained a phone number from A.O. related to her rape, and when he indicated that he had done so,

4

the prosecutor asked what, if anything, Trooper Flaugher did with that number. Appellant's counsel objected, and a bench conference ensued. Appellant's counsel argued that the State was trying to establish that the number Trooper Flaugher got from A.O. was appellant's number, but it had "no witness from AT&T to enter [the] records into evidence," noting that Trooper Flaugher was "not the custodian of records for AT&T," and the records were not certified. When the court indicated that it was inclined to sustain the objection, the prosecutor responded that Trooper Flaugher was an expert who relied on the records in the course of his investigation, and the records were admissible as the basis for his expert testimony, stating that, "even if the document is not itself admitted into evidence, the facts contained within it can be presented in trial as evidence." Appellant's counsel responded that the State had not named any experts prior to trial. The prosecutor did not dispute that assertion, but he stated that he had given appellant's counsel "the courtesy of bringing him in, sitting him down with [Trooper Flaugher], having [Trooper Flaugher] . . . go through these records, explain to [appellant's counsel] what they meant and what the conclusions were." The prosecutor asserted that appellant's counsel knew "everything this witness is going to testify about."

Appellant's counsel stated that he believed Trooper Flaugher was going to use the records to demonstrate that appellant's cell phone was in a certain area because it pinged certain cell phone towers. He argued that Trooper Flaugher should not be permitted to give such expert testimony because he was not named as an expert, and therefore, the defense had not obtained a "corresponding expert" on this issue. Accordingly, he asserted, the

5

defense would be prejudiced by any testimony regarding the location of calls based on cell tower pings. The prosecutor argued that, if the court determined that the State should be sanctioned for not disclosing Trooper Flaugher as an expert witness, that sanction should not include disqualification of Trooper Flaugher as a witness because appellant's counsel had been informed of the testimony that Trooper Flaugher was going to give.

The court ruled that Trooper Flaugher would be permitted to testify "about calls made but not locations," stating

> that is what the defense did not expect as far as his expertise and indicated that he would have called somebody from AT&T or somebody who could oppose the pings situation. So the [c]ourt will let Trooper Flaugher testify as to the limited issues of calls made back and forth. [Appellant's counsel] indicated he knew that would occur but not the locations.

After the court issued its ruling, appellant's counsel objected, expressing his continued opposition to Trooper Flaugher's testimony:

> Your Honor, but if he is going to testify to calls made, he wouldn't be expressing any kind of expert opinion so he wouldn't be able to testify as to the hearsay of when calls were made, because that information, the business records exception to that would have to come from a qualified witness who established that they were made for that.

He further stated that evidence "has to be authenticated. In a case of this nature where he's talking about a third party's business records, any reference to that at all has to come in by a custodian. . . . So there's no way the [call records] come in."[3]

---

[3] Although defense counsel did not utter the word hearsay, it is clear that he believed that the call records were hearsay, and he took the position that they were admissible only if the State made the proper showing that they fell within the business records exception to the hearsay rule.

The court rejected defense counsel's argument, stating as follows:

I find he's an expert with regard to the cell phone issue. What I find is that you had a surprise in not knowing that he was going to testify as to the location. You said you knew that he was going to testify as to the calls. I find that he's an expert in that and can testify.

As noted, Trooper Flaugher testified that the phone number that A.O. identified as the number of the man who raped her belonged to appellant. He further testified that the call records showed that there were several calls to A.O.'s phone number from appellant's phone on the night A.O. was raped. The call records were admitted into evidence after Trooper Flaugher's testimony.

## II.

### Parties' Contentions

Appellant argues that the circuit court erred in admitting the call records connecting his phone with A.O.'s phone. In that regard, he contends that the phone records were inadmissible hearsay. He asserts that the court erred in admitting the records on the ground that they served as the basis for Trooper Flaugher's expert opinion for three reasons: (1) Trooper Flaugher did not give an expert opinion; (2) the records were not trustworthy enough to form the basis for an expert opinion; and (3) Trooper Flaugher "should not have been qualified as an expert because he was not disclosed as one before trial."

Although the State's argument below was based solely on the ground that the records were admissible as records relied upon by Trooper Flaugher in forming an expert

opinion, the State has abandoned that argument in this Court.[4]  Instead, relying on the principle that this Court can affirm a circuit court's decision if it was "right for the wrong reason," *see Dynacorp Ltd. v. Aramtel Ltd.*, 208 Md. App. 403, 454 n.25 (2012), *cert. denied*, 430 Md. 645 (2013), the State argues that the trial court properly exercised its discretion in admitting the call records because they were not hearsay, and "[a]s such, the only prerequisite for admission of the call records was their authenticity, which was established."  Alternatively, it argues that, even if the AT&T records were hearsay, the "evidence would support a holding that the records were nevertheless admissible under the business records exception to the hearsay rule. Accordingly, the State contends that "the trial court properly exercised its discretion to admit cell phone records showing calls from [appellant] to the victim."

In his reply brief, appellant responds in several ways.  First, he argues that this Court should not accept the State's argument that computer-generated documents are not hearsay.  Second, he asserts that, even if this Court were to adopt this position, there was no evidence here that the phone records were "'produced by a machine, not a human declarant,' as the State contends."  Third, he contends that, with respect to the evidence that the number that

---

[4] The State abandoned this argument for good reason.  "Maryland Rule 5-703(b) permits a trial judge, in his or her discretion, to admit evidence as the factual basis for the expert's opinion if the evidence is unprivileged, trustworthy, reasonably relied upon by the expert, and necessary to 'illuminate' the expert's testimony." *Cooper v. State*, 434 Md. 209, 230 (2013).  This is true even if the evidence relied upon is inadmissible hearsay. *Id.*  Here, however, Trooper Flaugher merely testified that he obtained appellant's phone records, and he described the substance of these records to the jury.  Trooper Flaugher offered no expert opinion testimony.  Thus, the records, if hearsay, were not admissible to show the factual basis for any expert opinion.

called A.O.'s phone belonged to appellant, "[i]t is difficult to conceive how a record that connects a number to an individual's name could be completely computer generated," noting that the "computer had to get Mr. Baker's name from somewhere to put it on the record and connect it to the cell phone number." Fourth, he argues that the argument that the records were admissible under the business records exception to the hearsay rule was not raised below, and "this Court should not find for the first time on appeal that the records were authenticated business records." Moreover, he asserts that the "trial court was not going to admit the records at all until the State argued that they were the basis for an expert's opinion. Thus, the only indication from below is that the court did not find them to be circumstantially authenticated."

## III.

## Standard of Review

This Court recently has explained the standard of review of a trial court's decision regarding the admission of evidence as follows:

> Determinations regarding the admissibility of evidence are generally left to the sound discretion of the trial court. *Hajireen v. State*, 203 Md. App. 537, 552, *cert. denied*, 429 Md. 306 (2012). This Court reviews a trial court's evidentiary rulings for abuse of discretion. *State v. Simms*, 420 Md. 705, 724-25 (2011). A trial court abuses its discretion only when "'no reasonable person would take the view adopted by the [trial] court,'" or "when the court acts 'without reference to any guiding rules or principles.'" *King v. State*, 407 Md. 682, 697 (2009) (quoting *North v. North*, 102 Md. App. 1, 13 (1994)).

*Donati v. State*, 215 Md. App. 686, 708-09, *cert. denied*, 438 Md. 143 (2014).

9

Nevertheless, when the issue involves whether evidence constitutes hearsay, that is a legal question that we review *de novo*. *Gordon v. State*, 431 Md. 527, 537-38 (2013). Whether hearsay evidence is admissible under an exception to the hearsay rule, on the other hand, may involve both legal and factual findings. *Id.* at 536. In that situation, we review the court's legal conclusions *de novo,* but we scrutinize its factual conclusions only for clear error. *Id.* at 538.

## IV.

### Admissibility of Call Records

Because the issue as presented on appeal is whether the call records were inadmissible hearsay, we begin our analysis with the definition of hearsay.[5] Pursuant to Md. Rule 5-801(c), hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Md. Rule 5-801(c).

Here, there is no dispute that the call records were offered for the truth of the matter asserted, i.e., that appellant called A.O. Rather, the issue is whether the call records constituted a "statement." In that regard, pursuant to this rule, evidence does not constitute a "statement" unless it is made by a declarant, which is defined as "a *person* who makes a statement." Rule 5-801(b) (emphasis added).

---

[5] Hearsay is not admissible, except as provided by the Maryland rules or "applicable constitutional provisions or statutes." Md. Rule 5-802.

Maryland has not specifically addressed whether computer records generally, or call records specifically, constitute hearsay. Other courts, however, have addressed the issue, and we find the analysis in those cases to be instructive.

In *State v. Austin*, 146 So. 3d 716, 722, 727 (La. Ct. App. 2014), the police obtained Austin's cell phone records from AT&T, and these records placed Austin in the area of the crime at the time of the offense. The Court of Appeal of Louisiana rejected Austin's claim that the cell phone records were hearsay, stating that the telephone records were "'generated solely by the electrical and mechanical operations of the computer and telephone equipment, and [are] not dependent upon the observations and reporting of a human declarant.'" *Id.* at 726 (quoting *State v. Austin*, 113 So. 3d 306, 316 (La. Ct. App. Cir. 2013)). Because the State had laid a proper foundation for the authenticity of the records, the court held that the records properly were admitted. *Id.* at 728.

Similarly, in *United States v. Lamons*, 532 F.3d 1251, 1255 (11th Cir. 2008), the defendant, a flight attendant, was convicted of making a threatening telephone call to his employer, Air Tran Airways. The government obtained billing records from Sprint, which showed that the defendant called Air Tran at the time the threat was made. *Id.* at 1262-63. Referring to testimony from the contractor for Sprint explaining the process involved in providing billing data, the court held that the data did not constitute hearsay because the statements were those of machines, not humans. *Id.* *Accord State v. Dunn*, 7 S.W.3d 427, 430-329 (Mo. Ct. App. 1999) (computer-generated telephone billing records were not hearsay because they were not the statement of a human declarant). *See also Lorraine v.*

*Markel American Ins. Co.*, 241 F.R.D. 534, 564 (D. Md. 2007) ("When an electronically generated record is entirely the product of the functioning of a computerized system or process, such as the 'report' generated when a fax is sent showing the number to which the fax was sent and the time it was received, there is no 'person' involved in the creation of the record, and no 'assertion' being made."); *Culbreath v. State*, 667 So. 2d 156, 162 (Ala. Crim. App. 1995) (because caller ID display is based on computer-generated information, there is no "out-of-court assertion," and the evidence is not hearsay); *People v. Caffey*, 792 N.E.2d 1163, 1191 (Ill. 2002) ("caller ID" information is not hearsay because it is based on computer-generated information).

To be sure, the view that computer-generated records in general, and phone records in particular, are not hearsay is not shared by all courts. *See, e.g., Fry v. State*, 885 N.E.2d 742, 747 (Ind. Ct. App.) (cell phone records for telephone company are hearsay), *transfer denied*, 885 N.E.2d 742 (Ind. 2008). We are persuaded, however, that the better reasoned view is that computer-generated records generally do not constitute hearsay. When records are entirely self-generated by the internal operations of the computer, they do not implicate the hearsay rule because they do not constitute a statement of a "person." In that situation, the admissibility of such data "'should be determined on the basis of the reliability and accuracy of the process' used to create and obtain the data." *State v. Reynolds*, 456 S.W.3d 101, 104 (Mo. Ct. App. 2015) (quoting *Dunn*, 7 S.W.3d at 432).[6]

---

[6] The State appears to concede that it bore this burden, asserting that it "arguably [was] required to produce '[e]vidence describing a process or system used to produce the proffered exhibit or testimony and showing that the process or system (continued . . .)

12

Applying the above-analysis to the present case, we agree with the State that, to the extent that the call records were computer-generated, they do not constitute hearsay. The problem in this case, as appellant points out, is that there was no evidence presented regarding how the call records were produced. Although it may be true that the AT&T records tracing calls from one number to another were computer-generated, s*ee Lamons*, 532 F.3d at 1262 (contractor for Sprint testified regarding process by which Sprint generated raw billing data, a fully automated process), the State here did not produce any evidence to this effect. Without such evidence, this Court is unable to affirm the admission of the call logs on the ground that they were computer-generated evidence that did not qualify as hearsay.

Moreover, another portion of the records admitted into evidence likely was not computer-generated. The call records showed, and Trooper Flaugher testified based on these records, that the number that called the victim's phone the night of the rape belonged to appellant. Again, there was no evidence how this data was generated, but it is unlikely that it was generated solely by the internal operations of the computer itself, and more likely that it was data entered by a person.

---

(. . . continued) produces an accurate result,'" citing Md. Rule 5-901(b)(9). It does not argue that it satisfied this burden, but rather, it asserts that appellant "never claimed below that the AT&T call records were not the result of a reliable process," and therefore, any such claim is not preserved for this Court's review. The State does assert, however, that Trooper Flaugher established the general reliability of cell phone records by his testimony that it is "generally accepted within the criminal investigation field that [cell phone records are] appropriate for use in investigations."

Courts have made a distinction between computer-generated records, where the data is generated by the internal operations of the computer itself, and computer-stored records, which reflect human input. In the latter situation, courts have found that the computer records constitute hearsay. *See, e.g.,* in *United States v. Cestnik*, 36 F.3d 904, 909-10 (10th Cir. 1994) (computer money transfer records were hearsay where each transfer record was created by an employee of the money transfer company directly entering the information into a computer), *cert. denied*, 513 U.S. 1175 (1995); *State v. Gojcaj*, 92 A.3d 1056, 1067 (Conn. App. Ct.) ("Computer printouts that contain stored human statements are hearsay when introduced for the truth of the matter asserted in those statements."), *certification denied*, 100 A.3d 854 (2014); *Black v. State*, 358 S.W.3d 823, 832 (Tex. Ct. App. 2012) (text messages were computer-stored information "produced by human thought and action," and therefore they were hearsay).

Here, as indicated, although there was no evidence adduced on this issue, it is likely that the assertion in the computer records that the phone number that called the victim was appellant's number was an assertion made by a person. Accordingly, we disagree with the State that we can affirm the admission of this evidence on the ground that it did not constitute hearsay.

The State next argues that, even if the records constituted hearsay they were admissible under the business records exception. Maryland Rule 5-803(b)(6) addresses the business records exception. It provides that the following evidence is not excluded by the hearsay rule:

Records of Regularly Conducted Business Activity. A memorandum, report, record, or data compilation of acts, events, conditions, opinions, or diagnoses if (A) it was made at or near the time of the act, event, or condition, or the rendition of the diagnosis, (B) it was made by a person with knowledge or from information transmitted by a person with knowledge, (C) it was made and kept in the course of a regularly conducted business activity, and (D) the regular practice of that business was to make and keep the memorandum, report, record, or data compilation. A record of this kind may be excluded if the source of information or the method or circumstances of the preparation of the record indicate that the information in the record lacks trustworthiness.

Rule 5-803(b)(6).

To admit evidence under the business records exception to the hearsay rule, the proponent of the evidence must lay a proper foundation. *Attorney Grievance Comm'n v. Keister*, 327 Md 56, 74-75 (1992). The Court of Appeals has explained that the requisite foundation for admitting a business record can be established in two ways: "by extrinsic evidence (usually live witness testimony) regarding the four requirements of Rule 5-803(b)(6) or by 'self-authentication' pursuant to Rule 5-902(a)(11)." *State v. Bryant*, 361 Md. 420, 426 (2000).[7]

A review of cases from other jurisdictions shows that the government typically establishes the foundation necessary to admit call records under the business records exception by either (1) calling an employee from the phone company, who testifies

---

[7] Rule 5-902(b), which previously was Rule 5-902(a)(11), creates an alternative method for authenticating business records without the testimony of the custodian of the records. It allows the proponent to establish that evidence is a business record without a live witness by providing an appropriate certification from the custodian of the records in question. If the proponent elects to utilize this method, however, they are required to "(i) notif[y] the adverse party of the proponent's intention to authenticate the record [with only a certification] and (ii) make[] a copy of the certificate and record available to the adverse party." Md. Rule 5-902(b)(1).

regarding the process by which call records are generated, that it is the regular practice of the business to make such records, and that they are regularly kept for business records, *see People v. Zavala*, 156 Cal. Rptr. 3d 841, 847 (Cal. Ct. App. 2013); *People v. Bonhomme*, 925 N.Y.S.2d 157, 159 (N.Y. App. Div.) *leave to appeal denied*, 17 N.Y.3d 902 (N.Y. 2011); or (2) by certification from the telephone company's records custodian. *See United States v. Yeley-Davis*, 632 F.3d 673, 678 (10th Cir.), *cert. denied*, 131 S. Ct. 2172 (2011). Neither of these methods were used in the present case.

The State argues, however, that it was "not necessary to obtain the testimony of a custodian or a certification under Md. Rule 5-902(b)," citing *Keister*, 327 Md. at 75 and other cases for the proposition that "[t]here are instances in which a court may conclude from the circumstances and the nature of the document involved that it was made *in the regular course of business*." (Citations and quotations omitted.) (Emphasis added.). All of the cases the State cites, however, predate the adoption in 1994 of the Maryland Rules of Evidence, including Rule 5-803(b)(6), which sets forth the requirements for admission of a document under the business records rule. The State does not address whether the common law rules of evidence apply at this point, now that the Rules of Evidence are in effect. *See Bernadyn v. State*, 390 Md. 1, 19 n.6 (2005) (Court declined to consider "whether the common law rules of evidence survive the adoption of the Maryland Rules of Evidence" because the case was disposed of on other grounds). Nor does the State discuss what about the "circumstances and nature of the document" would permit the court to find that the AT&T documents qualified as business records, other than to say that the records

16

were disclosed by court order. Under these circumstances, and because this argument was not raised below, we decline to address whether the call records were sufficiently authenticated as a business record by circumstantial evidence. *Donati*, 215 Md. App. at 743 ("[W]here a party does not adequately brief an argument, appellate court need not address it."); Md. Rule 8-131(a) ("Ordinarily, the appellate court will not decide [an] issue unless it plainly appears by the record to have been raised in or decided by the trial court").

On the record before us, we hold that, in the absence of testimony from the custodian of records, or any certification, the circuit court erred in admitting the call records. We note, however, that if the case is tried again and the proper foundation is laid, the records may be admissible.

> **JUDGMENTS OF THE CIRCUIT COURT FOR CECIL COUNTY REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY CECIL COUNTY.**