*Emily Blitzer, et al. v. Amanda Breski*, No. 875, September Term, 2022. Opinion by Sharer, J. Frederick.

**ANIMALS – INJURIES TO PERSONS – DOGS – DUTIES AND LIABILITIES IN GENERAL**

In an action brought by plaintiff against appellants pursuant to Maryland Code, Courts and Judicial Proceedings, ("CJP") § 3-1901, which provides that the owner of a dog is strictly liable, regardless of the dog's vicious or dangerous propensities, "for any injury, death, or loss to person or property that is caused by the dog, while the dog is running at large," trial court did not err in directing verdict in favor of plaintiff and finding that the dog was "running at large" when it ran up and bit plaintiff while plaintiff was on property shared by both her and appellants. Plaintiff was not required to show that she had exclusive use and control of the area where the bite occurred. Rather, plaintiff merely needed to show that, at the time of the bite, the dog was free, unrestrained, and not under control, and that plaintiff was not committing or attempting to commit a trespass or other criminal offense on appellants' property; committing or attempting to commit a criminal offense against a person; or teasing, tormenting, abusing, or provoking the dog (as defined by the CJP § 3-1901(c) exceptions).

**CRIMINAL LAW – EVIDENCE – HEARSAY – HEARSAY IN GENERAL – EVIDENCE AS TO INFORMATION ACTED ON**

Trial court did not err in admitting, as non-hearsay, an anonymous complaint contained within an otherwise admissible report prepared by a Baltimore City Animal Control Officer. The statement was not being offered to prove the truth of the matter asserted; rather, the statement was being offered to show what the Animal Control officer did as a result of the complaint.

**NEW TRIAL – GROUNDS – VERDICT OR FINDINGS CONTRARY TO LAW OR EVIDENCE – EXCESSIVE DAMAGES – IN GENERAL**

**NEW TRIAL – PROCEEDINGS TO PROCURE NEW TRIAL – REMISSION OR REDUCTION OF EXCESS OF RECOVERY – IN GENERAL**

After the jury returned a verdict against appellants in the amount of $132,322.00, trial court did not abuse its discretion in denying appellants' motion for a new trial and request for remittitur. The evidence adduced at trial established that plaintiff endured a significant physical and emotional trauma as a result of the bite. There was nothing "grossly excessive" or "shocking" about the jury's decision to award plaintiff $132,322.00 as damages.

REPORTED

IN THE APPELLATE COURT

OF MARYLAND*

No. 875

September Term, 2022

_____

EMILY BLITZER, ET AL.

v.

AMANDA BRESKI

_____

Zic,
Albright,
Sharer, J. Frederick
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Sharer, J.

_____

Filed: September 27, 2023

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

*Friedman, Daniel, J. did not participate in the
Court's decision to designate this opinion for
publication pursuant to Md. Rule 8-605.1.

Amanda Breski ("Appellee"), filed, in the Circuit Court for Baltimore City, a civil complaint against Emily Blitzer and Julie Colin ("Appellants") following an incident in which Appellee was bitten by a dog owned by Appellants. The complaint was based, in part, on § 3-1901 of the Courts and Judicial Proceedings Article ("CJP") of the Maryland Code, which imposes strict liability on dog owners for personal injury or death caused by a dog while the dog is "running at large." A jury trial was held, and, at the conclusion of the evidence, Appellee moved for directed verdict on her strict liability claim. The trial court granted the motion, and the jury subsequently awarded Appellee damages of $132,322. Appellants thereafter filed a motion for a new trial, arguing that the jury's award of damages was excessive. The court denied the motion, and this timely appeal followed.

In this appeal, Appellants present five questions, which we have rephrased and consolidated for clarity.[1]

1. Did the trial court err in granting Appellee's motion for directed verdict on her strict liability claim?

2. Did the trial court err in admitting a business record into evidence?

---

[1] In their opening brief, Appellants ask:

Did the trial court err in its interpretation of Md. Rule 2-519(b) regarding directed verdicts?

Did the trial court err in directing a verdict on [CJP §] 3-1901(c) regarding . . . whether the dog was "running at large," by misapplying a criminal statute regarding dangerous dogs?

Did the court err in directing a verdict as to contributory negligence?

Did the trial court err in its ruling regarding hearsay within hearsay creating an undue influence on the jury?

Did the trial court abuse its judicial discretion in denying remittitur when the jury verdict "shocked the conscience?"

3. Did the trial court abuse its discretion in denying Appellants' motion for a new trial?

Finding neither error nor abuse of discretion, we shall affirm.

**BACKGROUND**

In March 2018, Appellee lived at 2926 Elliott Street, a row home located in Baltimore City. Appellants lived next door at 2928 Elliott Street. The homes were joined at the side, and there was a narrow alleyway between the homes that was accessible through a side entrance located on each of the homes. The alleyway was also accessible through one of two adjoining rear gates that led to an open concrete pad located at the rear of the properties. Although the gates were situated such that each home had a separate entrance to the alleyway, there was no physical structure or other marking within the alleyway to indicate which part of the alleyway, if any, was exclusive to either property.

At the time, Appellants owned a large German Shepherd named Hooper. Appellants frequently allowed Hooper to be in the alleyway between the properties. Appellee oftentimes parked her car on the concrete pad behind her home, which she accessed through the rear gate adjoining her home.

On March 6, 2018, Appellee left her home through the rear gate and went to her car, which was parked, as usual, on the concrete pad behind her home. At about that same time, Ms. Blitzer let Hooper go, unleashed, into the alleyway between the two homes. As Appellee was getting into her car, Hooper ran out of the alleyway to where Appellee was standing and bit her on the leg. After a brief moment, Ms. Blitzer came on the scene and

2

secured Hooper. Appellee suffered several puncture wounds as a result of the bite, which required medical treatment.

Appellee thereafter filed a civil complaint against Appellants, alleging, *inter alia,* that Hooper had vicious or dangerous propensities and that Appellants were therefore strictly liable and negligent in failing to protect Appellee from their dog. Appellee also alleged, in the alternative, that Appellants were liable pursuant to Maryland Code, Courts and Judicial Proceedings, (" CJP") § 3-1901. That statute provides that the owner of a dog is strictly liable, regardless of the dog's vicious or dangerous propensities, "for any injury, death, or loss to person or property that is caused by the dog, while the dog is running at large[.]" CJP § 3-1901(c). The statute does not define the term "running at large." *Id.*

### Evidence Dog Was "Running at Large"

Appellee testified that the side of the alleyway closest to her home, which she accessed through the rear gate next to her home, was her exclusive property. As to the concrete pad, Appellee testified that the portion of the concrete pad directly behind her home, which was where the bite occurred, was also her sole property, while the adjacent concrete pad that sat behind Appellants' home was their sole property. Appellee testified that the two concrete pads were separated by a seam in the concrete. That seam started at a point directly between the two rear gates and ran in a straight line all the way to a connected alleyway that led to the street. A photograph of the rear of the properties, depicting the concrete pad, was admitted into evidence.

Appellants disputed Appellee's claims regarding use and ownership of the alleyway and concrete pad. Ms. Colin testified that the alleyway was always a shared space that was

3

used by residents of both homes, and that the concrete pad was similarly used. Ms. Blitzer testified that there was nothing between the two concrete pads to indicate where each property ended.

As to her recollection of the events at the time of the incident, Ms. Blitzer admitted that she had been in the alleyway between her home and Appellee's home with Hooper and her two other dogs. At the time, Hooper was not on a leash or otherwise restrained, save for the gates at the rear of the property, which Ms. Blitzer believed to have been closed. Ms. Blitzer testified that at some point she let the other two dogs back inside her home, thereby leaving Hooper in the alleyway unleashed and unsupervised. A short time later, Ms. Blitzer heard a commotion on the parking pad, went to investigate, and saw that Hooper had bitten Appellee. Ms. Blitzer then secured Hooper and took him back to her home.

### *Business Record*

At trial, Appellee introduced into evidence a copy of a report from Baltimore City Animal Control ("Animal Control") regarding the incident at issue. That report included an "Animal Control History Report," which showed that, in August 2017, Animal Control had investigated an incident involving Hooper. The report included what appeared to be an anonymous complaint followed by a description of Animal Control's response to the complaint in the words of the responding officer:

> Dog owner routinely allows dog into alleyway between houses unrestrained and dog barks aggressively at children and other dogs who walk by front of house. Dog owner put up sign saying that the dog bites. Dog owner not taking appropriate responsibility to restrain dog. Dog could push out of alley gate into street and harm people or other animals.

4

AEO Cooper on 8/14/17 @ 1:26 p.m. arrived at above address and made contact with d/o Julie Colin . . . who stated she allows the dog to play freely in rear yard. I observed rear yard and it is secure however dog can go in to other property that is also secured. Next door house is vacant I advised d/o to be with dog in rear yard at all times.

Appellants objected to the admission of the Animal Control report on hearsay grounds. They argued that, although the report was generally admissible under the business record exception to the hearsay rule, the anonymous statement regarding the August 2017 incident was not admissible because it was "hearsay within hearsay."

The trial court ultimately admitted the report in its entirety. The court explained that it would instruct the jury that the anonymous statement may be considered "for what animal control did as a result, but not for the truth of what was actually stated by whoever it was that was complaining." After admitting the report, the court instructed the jury as follows:

> Members of the jury, . . . let me explain one thing that is important about this record. You will see . . . these are records of the City's Animal Control Unit about any record relating to this address. There is one entry there which has a record, a summary of the complaint that was anonymously [sic] to the Animal Control Unit.

> You may not rely on the truth of what is stated in that complaint because that person, presumably some resident of the City of Baltimore, is not here, is not subject to cross-examination and is not himself or herself part of the Animal Control Unit. You may, however, consider the entry relating to what the Animal Control Unit did in response to that complaint which in the document includes talking to Ms. Colin and what she allegedly said or what she said according to the record to the Animal Control Agent.

## *Motion for Directed Verdict*

At the conclusion of the evidence, Appellee moved for a directed verdict on her strict liability claim pursuant to CJP § 3-1901, asserting that it was undisputed that, at the time of the attack, Hooper was "running at large." Appellee asked the trial court to construe the term "running at large" considering Maryland Code, Criminal Law ("CR"), § 10-619, which prohibits a person from either leaving "a dangerous dog unattended on the owner's real property" or allowing "a dangerous dog to leave the owner's real property" without proper restraint. CR § 10-619(d). The statute defines "owner's real property" as "real property owned or leased by the owner of a dog." CR § 10-619(a)(3)(i). The statute further provides that "'[o]wner's real property' does not include a public right-of-way or a common area of a condominium, apartment complex, or townhouse development." CR § 10-619(a)(3)(ii).

Appellants responded that Appellee had not presented any evidence establishing that any portion of the alleyway between the homes or the concrete pad was her sole property. They insisted that the alleyway and concrete pad were "shared property." Thus, they concluded, that Hooper was not "at large" as contemplated by the statute when the attack occurred.

The trial court ultimately agreed with Appellee:

> The critical question here is how to regard this area between the two leased premises, which has been called an alleyway[.] . . . It's a space, narrow space, between the two houses which is itself enclosed. And then the parking pad, which is an unenclosed area behind the houses.

6

There is no dispute . . . that the bite that occurred here occurred outside of the fences on the parking pad area on the side of that parking pad that was closer to and dedicated to the plaintiff's leased premises.

Now there is no evidence introduced of the leases and of exactly what the statute [sic] of that intermediate area was or the parking pad in the leases.

\* \* \*

But the issue was decided for me by [CR §] 10-619, the criminal law article, which informs the application of [CJP § 3-1901] on dog liability and establishes the eminently sensible rule that one is not allowed to let one's dog run at large in a common area of an apartment complex. Now it may not sound like two adjoining tenancies or an apartment complex but they're two adjoining tenancies. And to the extent that the defendants' claim that that area was a true common area, that is, the entire part of that area available for use by both tenants then it becomes the common area of an apartment complex. So in either view of the evidence, either the shared view of the defendants or the split down the middle exclusive view of the plaintiff, the plaintiff wins because the dog was running at large in a common area loose.

The trial court thereafter directed a verdict against Appellants on the issue of liability pursuant to CJP § 3-1901, *i.e.*, that Appellants were strictly liable because Hooper was "running at large" when the bite occurred. As a result of the court's decision, Appellee dismissed all other claims of liability.[2]

---

[2] At trial, Appellants argued that Appellee's negligence claim should fail because Appellee was contributorily negligent in leaving the rear gate open just prior to the bite. The trial court ultimately directed verdict in favor of Appellee on Appellants' contributory negligence claim. Appellants now argue that the court's decision was erroneous. We need not decide that issue, as it was rendered moot when Appellee dismissed her negligence claim.

7

### *Damages, Jury Verdict, and Motion for New Trial*

Because the trial court directed a verdict in favor of Appellee on her strict liability claim, the only issue submitted to the jury was damages.

Appellee stated that the dog ran at her "full speed" and then latched onto her leg. Appellee testified that she was "shaking" and "couldn't speak" and feared for her life. Although injured, Appellee testified that she went to work after the bite but had to leave early to get medical treatment. At the time of the bite, she was 31 years old and working as a "territory manager," which involved assisting chronic pain patients in a hospital setting.

Appellee testified that the bite resulted in several puncture wounds on her leg that required multiple sutures and left a scar. Photos of the wound were admitted into evidence. As a component of her medical treatment, she also received a tetanus shot and a rabies vaccine, both of which were extremely painful. Appellee testified that she had trouble sleeping following the incident.

One year later, Appellee consulted a doctor because she was having continued pain, numbness, and tingling in the area of the bite and she continued to experience numbness and pain in her leg. She testified that as a result of the incident she was now fearful of dogs. Appellee testified that her symptoms were negatively affecting her job performance because she had difficulty being on her feet for extended periods of time. Moreover, she testified, the symptoms were also negatively affecting her ability to do certain of her regular activities, such as walking, hiking, and household chores.

Sarah McKinney, Appellee's former roommate at 2926 Elliott Street, testified that she talked to Appellee several hours after the dog bite and at that time Appellee was "stressed" and "in a lot of pain."

Allison Broadwater, Appellee's former coworker, testified that she saw Appellee at work following the dog bite and that Appellee was "very visibly upset" and "very uncomfortable." Ms. Broadwater testified that she examined the wound, which she described as "a very bad bite" and "not like a superficial bite." Ms. Broadwater stated that, in the weeks following the bite, she had to help Appellee at work because Appellee "was having trouble standing" and "was limping and still in pain[.]"

Ultimately, Appellee consulted Dr. Michael Franchetti, an orthopedic surgeon. Dr. Franchetti testified that he performed an independent medical evaluation of Appellee on April 21, 2022 and determined that Appellee had "permanent pain and scarring" as a result of the bite. Dr. Franchetti also determined that Appellee had suffered some nerve damage and muscle loss and he further opined that Appellee's symptoms were consistent with a permanent injury.

At the conclusion of the evidence, and after the trial court granted Appellee's motion for a directed verdict on her strict liability claim, the case was submitted to the jury on the issue of damages. The jury awarded Appellee damages of $132,322.

Appellants subsequently filed a "Motion for a New Trial, to Modify the Judgment, or for Remittitur." Appellants argued, among other things, that the jury's verdict was excessive. Appellants asked the court to grant a new trial or, in the alternative, order remittitur.

The trial court denied Appellants' motion without a hearing. In its written order, the court stated that "[t]he amount of the judgment is high, but not so high as to warrant the Court's intervention contrary to the findings of the jury."

This timely appeal followed. Additional facts will be supplied as needed to complete our analysis.

## DISCUSSION

## I. Strict Liability

### *Parties' Contentions*

Appellants contend that the trial court erred in granting a directed verdict on the issue of strict liability because "a genuine dispute existed as to whether [Appellee] provided proof of ownership of the concrete parking pad" where the bite occurred. Appellants assert that the court also misconstrued CJP § 3-1901 by relying on CR § 10-619, a criminal statute, in determining that Hooper was "running at large" when the bite occurred. Further, Appellants posit that Appellee bore the burden of establishing "that she had exclusive use or control of the area where her vehicle was parked, and that the dog had ventured off of its owners' leased property or could be considered 'at large' under a civil definition, in order to warrant a strict liability directed verdict." Absent such a showing, they argue, a directed verdict was inappropriate.

Appellee responds that the trial court's definition of "running at large" and its application of that definition to the facts of the case was reasonable and consistent with the relevant law.

### Standard of Review

Maryland Rule 2-519(a) provides, in pertinent part, that "[a] party may move for judgment on any or all of the issues . . . in a jury trial at the close of all the evidence." In reviewing a court's ruling on a motion for judgment, "[w]e ask whether on the evidence adduced, viewed in the light most favorable to the non-moving party, any reasonable trier of fact could find the elements of the tort by a preponderance of the evidence." *Sugarman v. Liles*, 234 Md. App. 442, 464 (2017) (quotation marks and citations omitted). "If there was 'any evidence, no matter how slight, that was legally sufficient to generate a jury question,' the motion [should be] denied." *Ayala v. Lee*, 215 Md. App. 457, 467 (2013) (quoting *Address v. Millstone*, 208 Md. App. 62, 80 (2012)). "But, where the evidence is not such as to generate a jury question, i.e., permits but one conclusion, the question is one of law and the motion must be granted." *Id.* (quotation marks and citation omitted). We review the court's decision *de novo*. *Id.*

Because our review also involves the interpretation of a statute, we set forth the well-known rules for statutory construction. "'The paramount object of statutory construction is the ascertainment and effectuation of the real intention of the Legislature.'" *Andrews & Lawrence Pro. Servs., LLC v. Mills*, 467 Md. 126, 149 (2020) (quoting *Whiting-Turner Contracting Co. v. Fitzpatrick*, 366 Md. 295, 301 (2001)). "The starting point of any statutory analysis is the plain language of the statute[.]" *Kranz v. State*, 459 Md. 456, 474 (2018). "'If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resort to other rules of construction.'" *Noble v. State*, 238

11

Md. App. 153, 161 (2018) (quoting *Espina v. Jackson*, 442 Md. 311, 322 (2015)) (further quotation marks and citation omitted). If, on the other hand, words of a statute are ambiguous, "a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process." *Id.* at 162 (quotation marks and citations omitted). In so doing, we consider "the structure of the statute, how it relates to other laws, its general purpose, and the relative rationality and legal effect of various competing constructions." *Id.* (quotation marks and citations omitted). "In every case, the statute must be given reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense." *Id.* (quotation marks and citations omitted).

*Analysis*

**Personal Injury or Death Caused by Dog**

Here, we are tasked with interpreting CJP § 3-1901 which, in full, provides:

(a) *Rebuttable presumption of owner's knowledge.* – (1) In an action against an owner of a dog for damages for personal injury or death caused by the dog, evidence that the dog caused the personal injury or death creates a rebuttable presumption that the owner knew or should have known that the dog had vicious or dangerous propensities.

(2) Notwithstanding any other law or rule, in a jury trial, the judge may not rule as a matter of law that the presumption has been rebutted before the jury returns a verdict.

(b) *Common law of liability for other than owner.* – In an action against a person other than an owner of a dog for damages for personal injury or death caused by the dog, the common law of liability relating to attacks by dogs against humans that existed on April 1, 2012, is retained as to the person without regard to the breed or heritage of the dog.

12

(c) *Liability of owner.* – The owner of a dog is liable for any injury, death, or loss to person or property that is caused by the dog, while the dog is running at large, unless the injury, death, or loss was caused to the body or property of a person who was:

> (1) Committing or attempting to commit a trespass or other criminal offense on the property of the owner;
>
> (2) Committing or attempting to commit a criminal offense against any person; or
>
> (3) Teasing, tormenting, abusing, or provoking the dog.

(d) *Limitation of effect of section.* – This section does not affect:

> (1) Any other common law or statutory cause of action; or
>
> (2) Any other common law or statutory defense or immunity.

We first note that CJP § 3-1901(a) is predicated upon a rebuttable presumption of liability. It is undisputed that Appellants were Hooper's owners, that Hooper caused Appellee's injuries, and that none of the exceptions provided in CJP § 3-1901(c) were shown to exist. The sole question before us is how to define "running at large." If, based on that definition, the evidence presented at trial could lead to only one conclusion, namely, that Hooper was "running at large" when the bite occurred, then the trial court was correct in directing verdict in Appellee's favor. If, however, there was any evidence that Hooper was not running at large, then the court erred. As noted, the statute does not include a definition of "running at large."

We begin by ascertaining the plain meaning of "running at large." Merriam-Webster defines "run" as "go[ing] without restraint[.]" *Run*, Merriam-Webster (2023), https://www.merriam-webster.com/dictionary/run. Black's Law Dictionary defines "at

13

large" as "free; unrestrained; not under control." *At Large*, BLACK'S LAW DICTIONARY (11th ed. 2019). Applying those definitions, we consider the phrase "running at large" as an idiom meaning free, unrestrained, or not under control.

As to the legislature's intent in including the phrase "running at large," we find nothing in the statute's legislative history to indicate why that phrase was included, nor do we find anything to elucidate whether the legislature intended for the term to be defined as it was by the trial court. Indeed, we find nothing to indicate why the legislature did not include a definition in the statute. When we consider the language of the statute itself, it becomes clear that a dog could be "running at large" regardless of its location vis-à-vis the owner's property.

The legislature included an exception in CJP § 3-1901 that exempts an owner from liability if the owner's dog causes injury or death to a person while that person is "[c]ommitting or attempting to commit a trespass or other criminal offense on the property of the owner[.]" CJP § 3-1901(c)(1). That provision leads to the inescapable conclusion that a dog owner could be liable if the owner's dog causes injury or death to a person while that person is on the owner's property, provided that that person was not committing or attempting to commit a trespass or other criminal offense. Any conclusion to the contrary would render the exception nugatory. Had the legislature intended the definition of "running at large" to be exclusive to situations in which the offending dog was off the owner's property (or, stated another way, had the legislature intended to exclude from its definition of "running at large" dogs that are on the owner's sole property), there would have been no reason to include the exception. That is, if an owner was not liable for injuries

14

caused by his or her dog while the dog was on the owner's property (because the dog would not be "running at large"), then it would not matter if the person injured was committing or attempting to commit a trespass or other criminal offense at the time of the injury. Thus, by including that exception, the legislature signaled that a dog could be "running at large" even while on its owner's property.

Considering the plain meaning of "running at large" and the legislature's clear message in including the exception set forth in CJP § 3-1901(c)(1), we are convinced that the evidence adduced in the instant case permitted only one conclusion – that Hooper was "running at large" when he bit Appellee. The undisputed evidence was that Hooper was free, unrestrained, and not under control in the area between Appellee's home and Appellants' home just prior to the bite, and that he continued to be free, unrestrained, and not under control when he ran from that area to the parking pad and bit Appellee. The undisputed evidence also established that at no time was Appellee: committing or attempting to commit a trespass or other criminal offense on Appellants' property; committing or attempting to commit a criminal offense against a person; or teasing, tormenting, abusing, or provoking Hooper (as defined by the CJP § 3-1901(c) exceptions). As such, Appellants were liable pursuant to CJP § 3-1901, and the trial court did not err in directing a verdict in Appellee's favor on that issue. Therefore, because our construction of "running at large" need not depend on whether Appellants' dog was on Appellants' premises at the time of the bite, we need not discuss Appellants' contention that the court erred in relying on CR § 10-619 in reaching its decision. Nonetheless, we have said that, in seeking legislative intent, a court should consider "the structure of the statute [and] how

15

it relates to other laws[.]" *Noble, supra*, 238 Md. App. at 162 (quotation marks and citations omitted).

Appellants argue that our interpretation of CJP § 3-1901 should be informed by our decision in *Slack v. Villari*, 59 Md. App. 462 (1984), a case in which we held that a dog was not "at large" when it ran across the owner's property and lunged at a couple who were walking along an abutting sidewalk, causing injury. *Slack*, 59 Md. App. at 466-67. Appellants are mistaken. Not only did that case predate the enactment of CJP § 3-1901 by 30 years, but it was based on an alleged violation of a different law. In *Slack*, the law at issue there was a Prince George's County leash law, which prohibited an owner from allowing a dog to be at large in the County, and which defined "at large" as "an animal not under restraint and off the premises of [the] owner." *Id.* at 471 (quotation marks and citation omitted). That law and definition has no applicability here. Moreover, the instant case did not involve a dog that was on an owner's exclusive property; rather, Hooper was on property shared by Appellee and Appellants when the bite occurred. *See Moura v. Randall*, 119 Md. App. 632, 649-50 (1998) (distinguishing *Slack* on the grounds that the dog bite occurred on the common grounds of a townhome community, which was "not the same as the property of a single[-]family residence, because of the right of access to the common grounds by other residents").

Appellants also argue that Hooper could not have been "running at large" at the time of the bite because Animal Control had investigated their home in August 2017 and had not issued a citation. We remain unpersuaded. The fact that Animal Control decided not to issue a citation in response to an earlier complaint is wholly irrelevant to the issue before

us. Animal Control may have made that decision for any number of reasons, and there is nothing in the record to indicate that the agency made any official findings regarding whether Hooper was "at large" at the time of the August 2017 investigation. Regardless, whether Hooper was "at large" at some point in August 2017 has no bearing on whether he was "at large" during the incident at issue here. And, even if it did, and even if Animal Control's decision not to issue a citation could somehow be construed as an official designation that Hooper was not "at large" at the time of the investigation, Animal Control was administering the local law not CJP § 3-1901. Any determination by Animal Control at the earlier time would have no bearing on our construction of the statute at hand.

Finally, even were we to accept Appellants' contention that our definition of "running at large" requires consideration of the parties' use and ownership of the alleyway and concrete pad where the bite occurred, we would still hold that the trial court did not err in directing verdict in favor of Appellee. As we have noted, Hooper was on property shared by Appellee and Appellants when the bite occurred, and it is undisputed that Hooper was free, unrestrained, and not under control. We see nothing in the statute to suggest that the legislature intended to insulate a dog owner from liability under such circumstances. Appellee had every right to be in the alleyway and on the concrete pad when, and where, the bite occurred, and that included the right to be free from attack by an unrestrained and uncontrolled dog. That Appellants just happened to also have a right to be in that area should not protect them from the strict liability outlined in CJP § 3-1901.

17

## II. Hearsay

### *Parties' Contentions*

Appellants next claim that the court erred in admitting the Animal Control report from August 2017. They argue that, although the report itself was admissible, the anonymous complaint contained in the report was not admissible because it constituted "hearsay within hearsay."

### *Standard of Review*

"Determinations regarding the admissibility of evidence are generally left to the sound discretion of the trial court." *Baker v. State*, 223 Md. App. 750, 759 (2015) (quotation marks and citations omitted). We review *de novo* when an evidentiary determination involves whether evidence is hearsay and whether it is admissible under a hearsay exception. *Gordon v. State*, 431 Md. 527, 538 (2013). If the court renders any factual findings in making a hearsay determination, those findings will not be disturbed absent clear error. *Id.*

### *Analysis*

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Md. Rule 5-801(c). Hearsay is generally inadmissible unless it falls within one of the recognized exceptions set forth in the Maryland Rules. *In re Matthew S.*, 199 Md. App. 436, 463 (2011). One such exception is the "business record exception," which permits the introduction of an out-of-court statement within a business record if the record was made

in the course of a regularly conducted business activity. *Bernadyn v. State*, 390 Md. 1, 18-20 (2005).

In some cases, a business record may include an out-of-court statement that could still be considered inadmissible hearsay, even if the business record itself meets the requirements of the business record exception. *Id.* Such "hearsay within hearsay" may still be admitted, but there must be a justification for its admission that is independent of the business record exception that permitted the introduction of the business record in which the statement was found. *Id.*

That said, an out-of-court statement is not hearsay, and thus may be admitted, if it is being offered for a purpose other than to prove the truth of the matter asserted. *Matthew S.*, 199 Md. App. at 463. For instance, "an out-of-court statement is admissible as non-hearsay if it is offered for the purpose of showing that a person relied and acted upon the statement, rather than for the purpose of showing that the facts elicited in the statement are true." *Morales v. State*, 219 Md. App. 1, 11 (2014).

We hold that the trial court did not err in admitting, as non-hearsay, the anonymous complaint contained within the Animal Control report. As the trial court explained to counsel at trial, and as the court later explained to the jury, the statement was not being offered to prove the truth of the matter asserted, *i.e.*, to show that Hooper had, in fact, engaged in any of the behaviors alleged in the complaint. Rather, the statement was being

offered to show what the Animal Control officer did as a result of the complaint. Because the statement was non-hearsay, its admission was not barred by the hearsay rule.[3]

### III. New Trial/Remittitur

#### *Parties' Contentions*

Finally, Appellants contend that the trial court abused its discretion in denying their motion for a new trial and request for remittitur. Appellants argue that the jury's verdict of $132,322 was not supported by the evidence and should have "shocked the conscience of the court[.]" Appellee contends that the court properly denied Appellants' requests.

#### *Analysis*

In its consideration of a motion for new trial, a trial court may determine that a verdict is excessive. *Cunningham v. Baltimore Cnty.*, 246 Md. App. 630, 703 (2020). Such a determination may be made if the verdict is "grossly excessive" or "shocks the conscience of the court." *Id.* (quotation marks and citation omitted). If the court finds the verdict excessive, it "may order a new trial unless the plaintiff agrees to accept a lesser amount

---

[3] In their brief, Appellants contend that the admission of the statement "unduly prejudiced the jury[,]" but they do not provide any further details in support of that contention. To the extent that Appellants are arguing that the statement should have been excluded because its probative value was outweighed by the danger of unfair prejudice, we note that Appellants did not raise that argument at trial. Thus, that argument was not preserved for our review. Md. Rule 8-131(a). Assuming, *arguendo*, that the argument was preserved, we cannot say that the court abused its discretion in admitting the evidence. The court provided a detailed instruction to the jury regarding proper use of the statement, and there is no evidence that the jury either failed to follow that instruction or was improperly influenced by the statement.

fixed by the Court." *Id.* That reduction, known as a remittitur, may be accepted or rejected by the plaintiff. *Id.* If the remittitur is rejected, then a new trial may be granted. *Id.*

"The granting or denial of a motion for new trial based upon the excessiveness of damages or a motion for remittitur is within the discretion of the trial court." *Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420, 449 (1992). We have described a court's discretion in that regard as "wide" and "virtually boundless[.]" *John Crane, Inc. v. Puller*, 169 Md. App. 1, 52 (2006). In addition, we have noted that, in deciding whether to grant a new trial or order remittitur, a court must act in deference to the jury's verdict because "'the jury is sacrosanct and its importance is unquestioned.'" *Id.* at 53 (quoting *Buck v. Cam's Broadloom Rugs, Inc.*, 328 Md. 51, 59 (1992)). We have further noted that an appellate court must act with equal deference in determining whether the trial court abused its discretion in granting or denying a motion for new trial or request for remittitur. *Id.*

Against that backdrop, we hold that the trial court did not abuse its discretion in denying Appellants' motion. The evidence adduced at trial established that Appellee endured significant physical and emotional trauma as a result of the bite. Appellee testified that she feared for her life when the attack happened, that she had trouble sleeping afterward, and that she was now fearful of dogs. As to her physical injury, Appellee testified that she suffered severe puncture wounds to her leg that required considerable treatment. Appellee stated, and her coworker confirmed, that the physical injury made working difficult in the days and weeks following the incident. Appellee, who was 31 years old when the bite occurred, testified that, as of the date of trial, she still had pain, numbness, and tingling in the area of the bite and that those symptoms were negatively

21

affecting her job performance and ability to do certain activities. Dr. Michael Franchetti, an orthopedic surgeon, testified that Appellee's injury was permanent.

Given that evidence, we see nothing "grossly excessive" or "shocking" about the jury's decision to award Appellee $132,322 as damages. At the very least, we cannot say that the court abused its discretion in upholding the jury's verdict.[4]

> **JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**

---

[4] The question naturally arises: when an appealing party asserts that the evidence below ought to have shocked the conscience of the trial court, must the appellate court be bound by the trial court's conscience (or lack thereof) or may we substitute our collective consciences for that of the trial court? More concisely, whose conscience must be shocked, or not shocked?

Whether the context is substantive due process rights, damages award, or contract law, case law states that it is the "court's" conscience that must be shocked. *E.g., Lombardi v. Whitman*, 485 F.3d 73, 85 (2d Cir. 2007) (the burden of a shock the conscience analysis falls on the one who must make such a decision). Does this mean our conscience must be shocked on appeal? We have not found a Maryland case that provides the answer. But, because we review for abuse of discretion, we must determine whether the circuit court abused its discretion in not having a shocked conscience. Thus, one could ask, must we consider our conscience as well? Interestingly, Justice Scalia in his dissent in *Herrera v. Collins,* 506 U.S. 390, 428 (1993) questioned the "usefulness of 'conscience shocking' as a legal test[.]"

22